UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO BAUTISTA,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br><br>    Defendant. | Case No. 18-cv-07693-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS**<br><br>Re: Dkt. Nos. 18, 19 |

## I.    INTRODUCTION

Plaintiff Antonio Bautista brings this action appealing the final decision of Defendant Andrew Saul, Commissioner of Social Security (the "Commissioner")[1] denying Bautista's application for disability benefits under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment pursuant to Civil Local Rule 16-5. For the reasons discussed below, Bautista's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for award of benefits.[2]

## II.    BACKGROUND

### A.    Regulatory Framework for Determining Disability

#### 1.    Five-Step Analysis

When a claimant alleges a disability and applies to receive Social Security benefits, the ALJ evaluates the claim using a sequential five step process. 20 C.F.R. § 404.1520(a)(4). At step

---

[1] Andrew Saul was confirmed as Commissioner while this action was pending and is therefore substituted as the defendant as a matter of law. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

one, the ALJ determines whether the applicant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is "work activity that involves doing significant physical or mental activities . . . that the claimant does for pay or profit." 20 C.F.R. § 220.141(a)–(b). If the claimant is engaging in such activities, the claimant is not disabled; if not, the evaluation continues at step two.

At step two, the ALJ considers whether the claimant has a severe and medically determinable impairment or combination of impairments. An impairment or combination of impairments is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not suffer from a severe impairment, the claimant is not disabled; if the claimant does have a severe impairment, the ALJ proceeds to step three.

At step three, the ALJ turns to the Social Security Administration's listing of severe impairments (the "Listing"). 20 C.F.R. § 404.1520(d); s*ee also* 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's alleged impairment meets one of the entries in the Listing, the claimant is disabled. If not, the ALJ moves to step four.

At step four, the ALJ assesses the claimant's residual functional capacity, or RFC, to assess whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e). The RCF is a determination of "the most [the claimant] can do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ considers past relevant work to be "work that [the claimant] has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how do to it." 20 C.F.R. § 404.1560(b)(1). If the claimant is able to perform past relevant work, the claimant is not disabled; if the claimant is not able to perform such past relevant work, the ALJ continues to step five.

At the fifth and final step, the burden shifts from the claimant to the Commissioner to "identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite her identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). If the Commissioner is able to identify such work, then the claimant is not disabled; if not, the claimant is disabled and

entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

**2. Supplemental Regulations for Determining Mental Disability**

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Therefore, any medically determinable mental impairment—i.e., one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*. at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).

This evaluation process is to be used at the second and third steps of the sequential

3

evaluation discussed above. Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). If the Commissioner determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3). This is a "mental RFC assessment [that is] used at steps 4 and 5 of the sequential process [and] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . . " Social Security Ruling 96-8p, 1996 WL 374184, at *4.

### 3. Additional Step Where there is Medical Evidence of Substance Use Disorder

Even if a claimant is determined to be disabled pursuant to this five-step process, a claimant is not eligible for Social Security benefits if "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The "key factor" in making this determination is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). The claimant's drug or alcohol use is only a material contributing factor to the determination of disability if the remaining limitations would not be disabling. *Id.* § 416.935(b)(3).

### B.     Procedural Background

In his applications for disability benefits, Bautista alleged that he was disabled on the basis of depression and schizophrenia as of January 1, 2013. Administrative Record ("AR") 115-116; 131-132. His application was initially denied on July 2, 2015, and denied upon reconsideration on August 24, 2015. AR 173, 187. Bautista filed a request for hearing with an Administrative Law Judge (ALJ) on September 3, 2015. AR 193. A hearing was held before ALJ Debra Underwood on March 30, 2017. AR 65-113. An unfavorable decision was issued on September 15, 2017. AR 21-39. Bautista's request for review by the Appeals Council was denied on May 17, 2018. AR 8.

In her written decision, the ALJ used the Social Security Administration's five-step

sequential evaluation process for determining disability. AR 24-39. At step one, she found that Bautista had not engaged in substantial gainful activity since his alleged onset date of January 1, 2013. AR 27. At step two, she found that he had the following severe impairments: "schizophrenia vs. schizoaffective disorder vs. psychosis NOS; depression NOS; post-traumatic stress disorder ('PTSD'); and substance addiction disorder." *Id*. The ALJ found that the medical evidence did not support a finding of severe impairment as to borderline intellectual or extremely low intellectual functioning. AR 28. In reaching this conclusion, the ALJ acknowledge that Bautista scored 65 on the Wechsler Abbreviated Scale of Intelligence ("WASI") test administered by Dr. Caitlin but found that Dr. Caitlin's testing was defective because: 1) Dr. Caitlin only administered the short form of the test; and 2) she administered the verbal performance sub-tests to Bautista even though English was not his first language, bringing down the scores. AR at 28 (citing AR 490). The ALJ further found that because consultative examiner Robery Bilbrey, PhD, could not administer the "full WAIS-IV and Wechsler Memory IV tests . . . due to the language barrier" there was "no valid testing to establish that cognitive disorder or borderline or extremely low intellectual functioning are medically determinable impairments." *Id*. (citing AR 470-471). The ALJ found that Dr. Bilbrey's diagnosis of a "cognitive disorder" was insufficient to meet this burden. *Id*.

At step three, the ALJ found that Bautista's "mental impairments, including the substance use disorders," met listing 12.03 (schizophrenia spectrum and other psychotic disorders). *Id*. She found that he met the paragraph A requirements for this listing because when he uses substances, he "has delusions and hallucinations," including "seeing angels and demons." *Id*. (citing AR 464-465; 472; 477). The ALJ further founds that Bautista met the paragraph B criteria because, "when abusing substances or alcohol" he has marked limitations in all four functional categories, that is, understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. AR 29.

In reaching these conclusions, the ALJ gave significant weight to the opinions of Bautista's treating sources at Lifelong Medical Care, Skylar Loeb, N.P. and Thui Bui, M.D., as to Bautista's level of functioning "in the context of drug or alcohol abuse." AR 30. She gave "great

5

weight" to their opinion that Bautista had marked limitations in interacting with others, concentrating, persistence and pace and managing oneself, but less weight to their conclusion that Bautista has extreme limitations as to understanding, remembering or applying information, finding that this conclusion was not consistent with the treatment records, "which show that the claimant is able to describe his symptoms and contemplate changes in medication dosages." *Id*.

The ALJ gave significant weight to the opinion of consultative examiner Dr. Bilbrey, who examined Bautista "in the context of his active heavy alcohol use" and found that he had marked limitations interacting with others and with concentrating and persisting as both conclusions were supported by Dr. Bilbrey's observations of Bautista during the examination. *Id*.

The ALJ gave some weight to the opinions of Dr. Caitlin, PsyD, who examined Bautista in November 2015 and found that he had extreme limitations in his activities of daily living, marked limitation in maintaining social functioning, and marked to extreme limitation in concentration, persistence and pace. *Id*. The ALJ noted, however, that Dr. Caitlin was "unable to determine if substance use disorder was ongoing or in remission." *Id*. Because Bautista's treatment providers at Lifelong Medical Care found that Bautista's substance and alcohol use "only intermittently stopped for two to three month periods, through their ongoing treatment relationship," the ALJ found their opinion more persuasive than Dr. Caitlin, "who formulated her inconclusive diagnosis based on one examination." *Id*.

The ALJ gave little weight to the opinion of Jodi Snyder, PsyD, who conducted a consultative examination in February 2017, because Dr. Snyder accepted Bautista's "report that he was not currently using drugs or alcohol." *Id*. According to the ALJ, this finding is inconsistent with Bautista's testimony at the hearing that he was "actively using methamphetamines" and with his "providers' report that he was actively abusing drugs or alcohol." *Id*.

The ALJ also gave little weight to the opinion of Katherine Weibe, PhD, who examined Bautista in January 2017, on the basis that Dr. Weibe relied on Bautista's self-report that he had stopped drinking five years ago even though the medical record showed that Bautista had "active alcohol use in 2015." AR at 31. The ALJ also found that Dr. Weibe's report had internal inconsistencies, such as a diagnosis of moderate methamphetamine disorder despite crediting

6

Bautista's report that he had stopped using methamphetamines four months before. *Id*. Nonetheless, the ALJ found that Dr. Weibe's finding that Bautista had moderate to marked limitations in mental abilities for unskilled work was "generally consistent" with Bautista's functional ability while using substances. *Id*.

The ALJ gave little weight to the opinions of state agency consultants Anna M. Franco, PsyD, and R.E. Brooks, M.D., who reviewed Bautista's record at the initial and reconsideration level and concluded that "there is no evidence of any substance abuse disorder/[Drug or Alcohol Abuse] issue." *Id*. The ALJ found that these opinions were inconsistent with the medical records showing that Bautista's "hallucinations are tied to substance or alcohol use" and with Bautista's "many drug and alcohol related diagnoses." *Id*. The ALJ further found that the opinions of Drs. Franco and Brooks were entitled to little weight because they did not examine Bautista and did not have access to the longitudinal records. *Id*.

Next, the ALJ found that even if Bautista stopped using drugs and alcohol his schizoaffective disorder and depression would continue to be severe impairments at step two. *Id*. She concluded, however, that he would not meet listing 12.03 if he stopped using drugs and alcohol because he would have only mild limitations as to his understanding, remembering or applying information and adapting or managing himself and moderate limitations as to his ability to interact with others and as to concentrating, persisting or maintaining pace. *Id*. at 32. Accordingly, the ALJ continued to step four of the five-step analysis to determine his RFC. *Id*. at 33.

At step four, the ALJ found that Bautista had the residual functional capacity to perform "a full range of work at all exertional levels but with the following nonexertional limitations: " the claimant could perform simple routine tasks, done by rote in a work environment with few changes and requiring little independent judgment; the claimant could perform work requiring only occasional contact with others; the claimant could not perform work requiring a rapid pace (such as on an assembly line); and the claimant could not perform work with high production quotas." *Id*.

At step five, the ALJ relied on testimony of vocational expert ("VE") Freeman Leeth Jr.,

who testified at the hearing, to conclude that Bautista could perform his past relevant work as a "[k]itchen helper (DOT 318.687-010, SVP 2, medium)[,] [c]leaner, institutional and commercial (DOT 381.687-014, SVP 2, heavy); and . . .[c]oin counter and wrapper (DOT 217.585-010, SVP 3, medium)." *Id*. at 37. Based on the VE's testimony, the ALJ found, in the alternative, that Bautista is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* at 38. Accordingly, the ALJ found at step five that Bautista was not disabled.

In his Motion for Summary Judgment, Bautista contends the ALJ erred in evaluating the opinions of his treating providers by failing to provide adequate reasons for rejecting their opinion that Bautista's condition would not materially change if he were not abusing drugs or alcohol. He also argues that the ALJ erred in finding at step two that his cognitive disorder was not a severe impairment.

## III. ANALYSIS

### A. Legal Standards Governing Review of Decisions of the Commissioner

When asked to review the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner which are free from legal error and supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "more than a mere scintilla," *id.*, but "less than a preponderance." *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Even if the Commissioner's findings are supported by substantial evidence, they should be set aside if proper legal standards were not applied when weighing the evidence and in reaching a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Courts "are constrained to review the reasons the

ALJ asserts" and "cannot rely on independent findings" to affirm the ALJ's decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, the Court may remand for further proceedings or for a calculation of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1019-1021 (9th Cir. 2014).

### B. Legal Standards Governing the Weighing of Medical Opinions

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit "afford[s] greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). The Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d at 830-31. "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*.

### C. Whether the ALJ Erred in Determining that Drug and Alcohol Abuse was Material to Bautista's Disability

"[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). In *Parra*, the Ninth Circuit found that the plaintiff failed to carry his burden because "[t]he record offered no evidence supporting the notion that the disabling effects of [the plaintiff]'s cirrhosis would have remained had he stopped drinking," and his physician had stated that cirrhosis is generally reversible. *Parra*, 481 F.3d at 748. On the other hand, "there does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." SSR 13–2p, 2013 WL 621536, *4 (Feb. 20, 2013). Instead, the determination of whether a claimant's drug or alcohol use is material to disability is based on consideration of "the

9

evidence as a whole, both medical and nonmedical." *Id*.

Here, the medical evidence in the record on the question of whether drug and alcohol use is material to Bautista's functional limitations is largely consistent, with treatment providers, examining doctors and nonexamining doctors alike agreeing that Bautista's symptoms in connection with his schizophrenia -- while possibly exacerbated by drug and alcohol use -- are not caused by it and that even in the absence of such use he would have significant deficits in his ability to function. Treatment providers at Lifelong Care Medical NP Loeb and Dr. Bui opined as follows in a Mental Impairment Questionnaire: "It is my medical opinion patient's deficits on functioning exist in the absence of substances." AR 609. On the same questionnaire, they stated that "[p]atient likely uses substances intermittently to manage anxiety related to psychosis and having to engage socially to utilize social services." *Id.* at 608. These opinions are consistent with the findings of Dr. Caitlin, who examined Bautista on November 30, 2015, conducted a number of tests and reviewed his records from Lifelong Medical Care for the period 2013-2015. AR 486. Dr. Caitlin wrote:

> It is difficult to determine whether or not the claimant continues to use drugs and alcohol. During the evaluation there were no indications that the claimant was under any kind of drug or alcohol influence. Even if the claimant has continued to use drugs and alcohol it is not the cause of his mental health conditions and has most likely been a misguided attempt to help manage his chronic depression and PTSD.

AR 494.

Dr. Weibe's opinions were similar to those of NP Loeb and Drs. Bui and Caitlin. AR 504-517. Dr. Weibe examined Bautista on January 23, 2017 and noted that he had a "history of polysubstance use that may have contributed to his psychiatric disorder symptoms" and that his "use of substances was likely an attempt to self-medicate problems including chronic depression and anxiety." AR 513. She continued:

> By his reporting, he stopped using alcohol years ago and last had any methamphetamine four months ago. He continues to experience psychotic symptoms, including auditory and visual hallucinations and paranoia, as well as depression and anxiety. It is likely that he will be unable to work for two years even if he does not use any substances in the future.

10

*Id*.

Dr. Bilbrey was somewhat more tentative on the question of materiality but did not reach a contrary conclusion. Rather, he noted that Bautista's report of hallucinations that only began a year ago when he was using methamphetamines would ordinarily suggest the presence of drug psychosis" but that "[f]urther evaluation, after a very lengthy period of time in which he was clean of substances, would be needed to fully rule out the presence of a thought disorder." AR 472. And Dr. Snyder, who conducted a consultative exam in February 2017 and also reviewed medical records from Lifelong Medical Care, also did not express any opinion suggesting that drug or alcohol use were material to the limitations she found, noting only that Bautista had a "history of polysubstance use" but "denied current use of drugs or alcohol." AR 498. Finally, the state agency doctors who reviewed the record agreed that there was "no issue" as to drug or alcohol use. AR 128, 144.

Notwithstanding the overall consistency of the medical opinions discussed above, however, there is some variation in the medical record as to the degree of Bautista's functional limitations and the role that drug and alcohol use plays in those limitations. Therefore, the Court applies the "specific and legitimate reasons" standard of review rather than the higher "clear and convincing" standard that is applied when a medical opinion is uncontradicted. Applying that standard, the Court finds that the reasons the ALJ offered for discounting the opinions of all the doctors in the record who addressed the question of materiality are not specific and legitimate and are not supported by substantial evidence.

### 1. NP Loeb and Dr. Bui

The ALJ explained that she gave little weight to the opinions of NP Loeb and Dr. Bui with respect to materiality because they were not supported by the medical records. AR 36. The examples the ALJ offers to support this conclusion seriously mischaracterize the record, however. First, she quotes a statement by NP Loeb from a January 4, 2017 visit in which she stated: "more likely substance abuse superimposed on schizoaffective [disorder]." *Id.* (citing AR 520). While this statement can reasonably be read to mean that alcohol and substance use may contribute to Bautista's symptoms, it is not inconsistent with the statement that even if Bautista stopped using

alcohol and drugs his functional limitations would persist.  Indeed, in the same treatment note NP Loeb wrote that Bautista "[a]ppear[ed] to be avoiding substances and sticking with medications and mania has subsided after [discontinuation] of prozac, however psychosis is not controlled at 15 mg. abilify so we will increase . . . ."  AR 520.  She also observed that he was experiencing visual and auditory hallucinations, hearing voices and seeing shadows, and that they were "bothering" Bautista and "stress[ing] him out." *Id*. at 519.

These observations are consistent with NP Loeb's treatment note from a December 2, 2015 visit that the ALJ also mischaracterizes to support her conclusion.  *Id*. at 36 (citing AR 558).  In that note, NP Loeb wrote that Bautista reported he had "not had meth, cocaine or etoh in several months" but that he was having visual hallucinations of seeing angels and devils and dark shadows, and also hearing voices "speaking Chinese or Japanese."  AR 557.  NP Loeb wrote, "[m]ore oriented with a couple of months without substances *however generally quite psychotic*."  AR 558 (emphasis added).  The ALJ quoted the first half of this sentence in her written decision but omitted the second half of the sentence, engaging in the sort of "cherrypicking" that has repeatedly been found to fall short of the Commissioner's obligations.[3]  *Forman v. Comm'r of*

---

[3] The Court notes that NP Loeb went on to note "questionable observance to po meds."  AR 558.  In his brief, the Commissioner argues that to the extent that ALJ ignored medical evidence that Bautista experienced psychosis even when he was not using drugs or alcohol these symptoms can be explained by his lack of adherence to his medications. *See* Defendant's Motion for Summary Judgment at 5.  This argument fails because it is not one of the reasons offered by the ALJ for her finding of nondisability.  *See Connett v. Barnhart*, 340 F.3d at 874 (holding that courts "are constrained to review the reasons the ALJ asserts" and "cannot rely on independent findings" to affirm the ALJ's decision).  The Court also notes that although the ALJ rejected the opinions of Dr. Bui and NP Loeb that Bautista's homelessness contributed to his noncompliance, AR 37, she did not address the evidence in the record supporting the conclusion that Bautista's medication noncompliance was a symptom of his mental impairment.  *See, e.g.,* AR 544-545 (6/22/2016 note by NP Loeb that Bautista was "trying to be more adherent to his medications" and was "avoiding drugs [and] alcohol" but nonetheless "remain[ed] quite disorganized mostly related to memory/cognitive presentation," "disoriented as to time" and brought his medications "all mixed up in an unlabeled bottle.").  *See Garrison v. Colvin*, 759 F.3d at 1018 n. 24 (holding that ALJ "erred in concluding that Garrison must be discredited on the ground that some—though not all—of her bouts of remission appear to have resulted from Garrison going off some of her medications" because these departures "were at least in part a result of her underlying bipolar disorder and her other psychiatric issues," and noting that "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants'' underlying mental afflictions.").

12

*Soc. Sec. Admin.*, No. CV-18-03202-PHX-DJH, 2019 WL 5388038, at *4 (D. Ariz. Oct. 22, 2019) (holding that "selective reading and characterization of the medical records by the ALJ was error" because "[t]he ALJ was required, but failed, to read the medical records in their entirety and in their proper context," and citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014) (stating that a treating physician's opinion may be rejected if contradicted by substantial evidence in the record, but scattered instances of partial or temporary improvement do not constitute such substantial evidence)); *see also Garrison v. Colvin*, 759 F.3d at 1018 ("Rather than describe Garrison's symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit Garrison."); *Brown v. Comm'r of Soc. Sec. Admin.,* No. CV-18-00620-TUC-MSA, 2020 WL 525680, at *5 (D. Ariz. Feb. 3, 2020) (reversing decision of the Commissioner on the basis that the ALJ had "cherrypicked" evidence from the medical record to support finding of nondisability and therefore that ALJ's decision was not supported by substantial evidence); *Reynoso v. Astrue*, No. CV 10-04604-JEM, 2011 WL 2554210, at *5 (C.D. Cal. June 27, 2011) (same).

       The ALJ also pointed to treatment notes by Dr. Pyevich, a psychiatrist at Lifelong Medical Care, who saw Bautista on January 22, 2014, to support her conclusion that Bautista's drug and alcohol use were material to Bautista's disability. AR 36 (citing AR 461). In particular, the ALJ pointed to the statement that Bautista had "reported" that he had "stopped all drug and alcohol use" and that he "reported that his mood was fairly good and he denied hallucinations and overt illusions, hopelessness and suicidal ideation" and *Id*. The ALJ also pointed to Dr. Pyevitch's notes that Bautista had "concrete" thought process, that his appetite, energy and concentration were good, and that he had a positive response to his medication overall. *Id*. However, the ALJ omits from her description of Dr. Pyevitch's note the fact that Dr. Pyevitch did not credit Bautista's report that he had abstained from drug and alcohol use, following the statement "states has been completely sober since last visit" with three question marks. AR 463. Rather, while warning Bautista of the negative impact of substance use on his mental status, Dr. Pyevitch appears to have attributed Bautista's improvement to improved compliance with his anti-

13

psychotic medication. *See id.* AR 463. Therefore, the Court concludes that this treatment note does not provide substantial evidence to support the ALJ's conclusion that Bautist improved (much less improved "dramatically") when he abstained from drugs and alcohol and the ALJ's reliance on Dr. Pyevitch's observations was not a "specific and legitimate reason" for finding that drug and alcohol use are material to his disability.

Finally, the ALJ found the opinion of NP Loeb and Dr. Bui as to Bautista's functioning if he stopped using alcohol and drugs was entitled to little weight because they "only observed 'sustained periods of 2-3 months' where the claimant was not using substances, therefore there is little basis for their prediction that the claimant's limitations would persist during a longer period of non-use." AR 36. As noted above, however, "there does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." SSR 13–2p, 2013 WL 621536, *4 (Feb. 20, 2013). The ALJ's approach amounted to imposing such an obligation and therefore this reason amounts to legal error.

### 2. Dr.Caitlin

The ALJ discounted Dr. Caitlin's opinions with respect to Bautista's ability to function when abstinent because Dr. Caitlin was "unable to determine" if Bautista's substance use order was ongoing and in remission and because she saw Bautista only once, giving her little basis to predict his functional limitations if he were stop using alcohol and drugs. The Court finds that this is a specific and legitimate reason for giving little weight to Dr. Caitlin's opinions on this subject. It is well-established that the opinions of a doctor who conducts a one-time examination generally are entitled to less weight than are the opinions of treating sources, who "'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of . . . consultative examinations. . . ." *Hunt v. Berryhill*, No. 16-CV-00313-JCS, 2017 WL 1177981, at *18 (N.D. Cal. Mar. 30, 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Dr. Caitlin acknowledged that her single examination was not sufficient to allow her to make a determination as to Bautista's current use of alcohol and drugs, and she did not have a longitudinal treatment relationship with Bautista

14

that would give her the unique perspective of such providers.  Therefore, the ALJ did not err in declining to rely on Dr. Caitlin's opinion that drug and alcohol are not the cause of Bautista's condition.  *See* AR 494.

### 3.  The State Agency Doctors

The ALJ gave little weight to the opinions of the state agency psychological consultants, who found that there was "no issue" regarding drug and alcohol use, based in part on the fact that these doctors "did not have access to the longitudinal medical record. AR 37.  For the same reasons the Court finds that this is a sufficient reason for discounting Dr. Caitlin's opinion with respect to the role drugs and alcohol play in Bautista's functional limitations, it also finds that this is a sufficient reason as to the opinions of the state agency doctors.

### 4.  Dr. Bilbrey

The ALJ gave "great weight" to Dr. Bilbrey's opinions that Bautista could perform simple tasks and that his "mental health would improve within one year of obtaining chemical dependency and mental health treatment," finding that these opinions were consistent with Bautista's report to Dr. Bilbrey that he could do some chores and evidence in the record that drug use led to worsening of his psychotic symptoms. AR 35 (citing AR 472).  However, she gave less weight to Dr. Bilbrey's findings that Bautista has "marked limitations in interacting with others, in concentrating and persisting, and in responding to changes in routine work setting" because Dr. Bilbrey "formed these assessments only in the context of the claimant's ongoing substance and alcohol use." *Id*. 35-36.  She concluded that that these opinions therefore were "not relevant to the claimant's functioning when abstinent from drug or alcohol use." *Id.*  36.  She also noted that Dr. Bilbrey "conclude[d] that [Bautista] had 'drug psychosis'" based on Bautista's report to Dr. Bilbrey that his hallucinations "only began a year before their exam, when he was using methamphetamine."  AR 35.  The Court finds that the ALJ's reliance on Dr. Bilbrey's opinions to support her finding of materiality falls short in numerous respects.

First the ALJ mischaracterizes Dr. Bilbrey's finding that Bautista has "drug psychosis."  In fact, Dr. Bilbrey's opinion on this subject was tentative.  The ALJ failed to acknowledge Dr. Bilbrey's opinion that "a very lengthy period of time in which he is clean of substances[ ] would

15

be necessary to rule out a thought disorder." AR 472. Further, to the extent Dr. Bilbrey made such a finding, it was based on a report to Dr. Bilbrey by Bautista that his hallucinations began a year before the exam when he was using methamphetamine. Yet Dr. Bilbrey noted that Bautista was a "poor historian," AR 469, and the record as a whole contradicts Bautista's reports. In particular, the medical evidence in the record reflects that Bautista had experienced auditory and visual hallucinations for much longer than a year when he saw Dr. Bilbrey in April 2015. *See* AR 569 (4/29/13 note by NP Cheryll MacIntyre stating that Bautista reported seeing angels and demons and that these hallucinations began in 1994); AR 574 (7/25/12 note by Dr. Lester Love that Bautista was experiencing auditory and visual hallucinations); AR 575 (6/14/12 treatment note by Faith Crumpler, M.D., noting hallucinations); AR 576 (6/8/12 initial intake notes stating that Bautista was having auditory hallucinations, "child's voice, man and woman" and that these started 5 years ago); AR 578 (5/11/12 treatment note by Susan Guerrero, PsyD, that Bautista reported having visual hallucinations of people looking at him that started in 1994). The ALJ was required to consider the whole record. In light of the extensive evidence in the record establishing that Bautista's hallucinations began long ago, she erred in relying on Dr. Bilbrey's opinion to the extent it was based on an incorrect report by Bautista of his own medical history.

Further, the ALJ offers no explanation for crediting Dr. Bilbrey's prediction concerning the improvement he would expect following a year of treatment and abstinence despite the fact that he -- like Dr. Caitlin -- examined Bautista only once and had no treatment relationship with Bautista. Like Dr. Caitlin (and in contrast to NP Loeb and Dr. Bui), Dr. Bilbrey lacked the longitudinal history that would give weight to such opinions. The Court also notes that Dr. Bilbrey did not address the amount of improvement he would expect or how it might change Bautista's functional limitations. Therefore, the Court finds that the ALJ did not provide specific and legitimate reasons for giving Dr. Bilbrey's opinions about Bautista's likely improvement as a result of abstinence and treatment greater weight than he gave the opinions of Bautista's treatment providers, or for relying on Dr. Bilbrey's opinions to find that drug and alcohol use were material to Bautista's disability.

In sum, the Court finds that the ALJ failed to provide specific and legitimate reasons

16

supported by substantial evidence for concluding that Bautista's drug and alcohol use was material to his disability despite the contrary opinions offered by his treatment providers. [4]

**D. Remedy**

"A district court may affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful"; and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case). The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison v. Colvin*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

The Court finds that it is appropriate to apply the credit-as-true rule here. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of physicians who treated and examined Bautista regarding the materiality of his drug and alcohol use to his functional limitations. The Court further finds that there are no outstanding issues that require further proceedings because if the improperly rejected opinions are credited it is clear that Bautista meets Listing 12.03. In particular, the ALJ's errors led her to conclude that Bautista's functional

---

[4] Because the Court finds that the ALJ erred with respect to her determination the drugs and alcohol are material to disability the Court does not reach Bautista's argument that the ALJ also erred when she found that his low cognitive functioning was not a severe impairment.

17

limitations would be significantly less severe if he stopped using drugs and alcohol and therefore, that he would not satisfy the paragraph B criteria, but these conclusions are not supported by the record.[5]

First, the ALJ relied on the opinions of Dr. Pyevich and NP Loeb discussed above in support of her conclusion that Bautista would have only mild limitations in understanding, remembering, or applying information, rather than moderate limitations, if he stopped using drugs and alcohol. AR 32 (citing AR 461, 558). As discussed above, the ALJ mischaracterized this evidence which does not support her conclusions regarding the impact of drug and alcohol use on Bautista's functional limitations, namely, that when Bautista "is abstinent from substances alcohol and adherent with his psychotropic medication, he shows great improvement in this area." *Id*.

Likewise, the ALJ's conclusion that Bautista's functioning in the area of social interactions would be only moderately impaired is infected by the errors discussed above. AR 32. She reasons, "[w]hile he experiences paranoia when using substances and alcohol that interfere [sic] with his social functioning, when he is abstinent his social functioning improves." *Id*. In support of this conclusion, she cites examples of doctors who have noted that Bautista is "either cooperative, friendly, or pleasant." *Id*. (citing AR 469 (Dr. Bilrey's observation that Bautista was "cooperative"); 478 (NP Loeb observation that Bautista was "cooperative with interview"); 486 (Dr. Caitlin's observation that Bautista was "responsive to the examiner"); 499 (Dr. Snyder's observation that Bautista's attitude was "cooperative"); 508 (Dr. Weibe's observation that Bautista was "cooperative and responsive"); 548 (note by "Enabling Services" observing that Bautista was "jumpy" but was a "friendly and pleasant fellow)[6]; 574 (Dr. Love's observation that Bautista's attitude was "calm and cooperative")). It is not how clear how Bautista's cooperative attitude

---

[5] In finding that Bautista would not meet listing 12.03 if he stopped using drugs and alcohol, the ALJ did not address whether the paragraph A criteria would still be met. The case need not be remanded to address that question, however, because the opinions of Bautista's treatment providers that the ALJ improperly ignored reflect that he experienced auditory and visual hallucinations even when he was not using alcohol and drugs, as discussed above. As the ALJ found that paragraph A was met because Bautista experienced "delusions and hallucinations," AR 28, the Court finds that the medical record, when evaluated under proper standards, establishes that Bautista would satisfy paragraph A on the same basis if he stopped using drugs and alcohol.
[6] It is not clear who made this notation and therefore the Court cannot determine what weight, if any, to give to the note).

18

1  when being seen by treatment providers supports the conclusion that he would have only moderate

2  limitations in social interactions if he stopped using drugs and alcohol given that the ALJ's finding

3  of marked limitations in the context of drug and alcohol use was based on difficulty dealing with

4  people he does not know, lack of friends, and paranoia, including seeing "angels and demons."

5  AR 29. The delusions, the ALJ found, "impact his ability to get along with other people." AR

6  29. Furthermore, as discussed above, the ALJ cherrypicked the medical record, ignoring the

7  evidence that showed that Bautista continued to experience auditory and visual hallucinations even

8  during periods of abstinence. Had the ALJ properly evaluated this medical evidence, it would

9  have established that Bautista's social functioning would be marked even if he stopped using

10 drugs and alcohol.

11     The Court reaches the same conclusion as to concentrating, persisting or maintaining pace.

12 The ALJ found that Bautista would be only moderately limited if he stopped using drugs and

13 alcohol, citing the same treatment note by Dr. Pyevich discussed above. AR 32. That note

14 observed that Bautista reported "conc[entration] good." AR 461. Yet the ALJ found that Bautista

15 had marked limitation in this category because of his visual and auditory hallucinations, his

16 inability to pay attention for more than twenty minutes or to finish what he started. AR 29. As

17 discussed above, the evidence in the record shows that Bautista's visual and auditory

18 hallucinations continued even during periods of abstinence. And Dr. Pyevich's note does not

19 address Bautista's limitations in persisting and pacing. The ALJ also cites Bautista's reported

20 ability to "walk[ ] and watch [ ] t.v.," "go to the shelter for meals and hang around in parks," and

21 "watch movies, shop for food once a week, and cook three times a week" when he is not using

22 drugs and alcohol to support her conclusion. *Id.* (citing AR 461, 556, 312, 314). It is not clear,

23 however, how any of these activities demonstrates an improved ability in the area of

24 concentration, persistence or pace in the absence of alcohol or substance use. *See Orn v. Astrue*,

25 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make 'specific findings relating to [the daily]

26 activities' and their transferability to conclude that a claimant's daily activities warrant an adverse

27 credibility determination."). Therefore, the ALJ erred in concluding that Bautista's limitations as

28 to concentration, persistence or pace would be only moderate if he stopped using drugs and

alcohol.

Because marked limitations in at least two Paragraph B categories is sufficient to establish disability and Bautista would have met that requirement but for the ALJ's errors, a finding of disability can be made without further proceedings under Listing 12.03. Therefore, the Court finds that it is appropriate to remand to the Commissioner for an award of benefits.

## IV. CONCLUSION

For the reasons stated above, Bautista's Motion for Summary Judgment is GRANTED and the Commissioner's Motion for Summary Judgment is DENIED. The case is remanded to the Commissioner for award of benefits. The Clerk is instructed to enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: March 26, 2020

JOSEPH C. SPERO
Chief Magistrate Judge